# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**JOSHUA JAKE WHITE**,

       Petitioner,

    v.

**MARK NOOTH**,

       Respondent.

Case No. 2:16-cv-323-SB

**OPINION AND ORDER**

**Michael H. Simon, District Judge.**

United States Magistrate Judge Stacie F. Beckerman issued Findings and Recommendation ("F&R") in this case on January 25, 2018. Judge Beckerman recommended that the Court deny Petitioner's Amended Petition for Writ of Habeas Corpus and dismiss the proceeding with prejudice. Judge Beckerman also recommended that the Court issue a Certificate of Appealability on the issue of whether cause exists to excuse Petitioner's procedural default of Ground Eight. The State objects to Judge Beckerman's finding that Ground Eight is timely because it relates back to Ground Seven in Petitioner's original habeas petition, and to Judge Beckerman's recommendation that the Court grant a Certificate of Appealability. Petitioner objects to Judge Beckerman's general conclusion that habeas relief should be denied, to her conclusion that an evidentiary hearing was not necessary, to Judge Beckerman's findings

on Grounds One and Six for the reasons stated in Petitioner's previous filings, and to Judge

Beckerman's conclusion that cause does not exist to excuse Petitioner's procedural default of

Ground Eight. The Court has reviewed Petitioner's original and amended habeas petitions, both

sides' briefs before Judge Beckerman, Judge Beckerman's F&R, and the parties' objections and

responses. The Court adopts Judge Beckerman's Findings and Recommendation with respect to

Grounds One through Seven, and with respect to the timeliness of Ground Eight. The Court

concludes, however, that habeas relief is warranted based on Petitioner's Ground Eight.

## STANDARDS

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in

whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C.

§ 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court

shall make a de novo determination of those portions of the report or specified proposed findings

or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate's findings and recommendations to which neither party

has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474

U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to

require a district judge to review a magistrate's report to which no objections are filed."); *United

States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court

must review *de novo* magistrate's findings and recommendations if objection is made, "but not

otherwise"). Although in the absence of objections no review is required, the Act "does not

preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other

standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ.

P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's

recommendations for "clear error on the face of the record."

**DISCUSSION**

## A.  Grounds One Through Seven

### 1.  Grounds One and Six

Petitioner objects to Judge Beckerman's findings on Ground One and Ground Six for the reasons stated in Petitioner's previous filings. Petitioner provides no other specific objects to Judge Beckerman's Findings and Recommendation. The Court has reviewed Petitioner's previous arguments relating to Grounds One and Six and adopts Judge Beckerman's Findings and Recommendation with respect to these grounds.

### 2.  Grounds Two, Three, Four, Five, and Seven

Petitioner also purports to object to Judge Beckerman's general conclusion that Petitioner's claim for habeas relief should be denied. A "general" objection to a Finding and Recommendation does not meet the "specific written objection[]" requirement of Rule 72(b) of the Federal Rules of Civil Procedure. *See, e.g., Velez-Padro v. Thermo King de Puerto Rico, Inc.*, 465 F.3d 31, 32 (1st Cir. 2006) ("Conclusory objections that do not direct the reviewing court to the issues in controversy do not comply with Rule 72(b)"). Thus, the Court construes Petitioner's arguments as objecting only to Grounds One, Six, and Eight. The Court reviews Judge Beckerman's findings on the remaining grounds for clear error and finds none. Thus, Judge Beckerman's Findings and Recommendation on these grounds is adopted.

### 3.  Evidentiary Hearing

Petitioner also objects to Judge Beckerman's recommendation that the district court deny an evidentiary hearing. Petitioner argues that, at a minimum, this Court should hold an evidentiary hearing on the alleged procedural default of Ground Eight. The Court concludes that no evidentiary hearing is necessary.

**B. Ground Eight**

The State objects to Judge Beckerman's finding that Ground Eight is timely because it relates back to Ground Seven in Petitioner's original habeas petition. The Court has reviewed this finding *de novo* and adopts Judge Beckerman's Findings and Recommendation on this ground. The State also objects that Ground Eight is futile; as discussed below, the Court disagrees.

**1. Relevant Testimony**

At trial, Noelle Gibson, a nurse at the Children's Center of Clackamas County, testified that she examined the alleged victim in this case, C.Y. ECF 19-1 at 166-201. Nurse Gibson testified that the primary role and function of the Children's Center is to complete a medical evaluation of children suspected to be victims of abuse, to conduct an interview, and to make treatment recommendations. *Id.* at 169. Nurse Gibson conducted a physical examination of C.Y., and was also present during an interview in which C.Y. indicated that she had inappropriately been touched.

The portions of Nurse Gibson's direct examination relevant to this dispute are as follows:

> Q. . . . Have you become familiar when you've worked both at OHSU and at the Children's Center in your professional capacity about manners or mechanisms to which children disclose, younger children disclose sexual abuse?
>
> A. Yes.
>
> Q. Okay. Is it uncommon for children to disclose incrementally?
>
> A. No, it's not.
>
> Q. Okay. And when I say disclose incrementally what does that mean to you?
>
> A. Oftentimes kids will make a disclosure to a person that they feel comfortable and safe with and talk about a little bit of what has happened, and they do this to kind of test of [sic] the waters, see

what kind of response they're going to get, see what negative things happen, what positive things happen, and if they feel supported and feel that they're going to be kept safe, then oftentimes as time passes and as they feel safer more information is disclosed.

Q. Okay. And is this phenomenon unusual or controversial in your field?

A. It's not unusual.

Q. Okay. Is it fair to say that a number of different variables can effect [sic] how a child discloses sexual abuse?

A. Yes.

*Q. At the conclusion of the interview did you go through a number of or make to Ms. Crystal Young [complainant's mother] a number of treatment recommendations?*

*A. Yes, we did.*

*Q. Okay. And were some of those treatment recommendations counseling to deal with the issue of sexual abuse?*

*A. Yes.*

Q. I guess you normally—Maybe you didn't do this personally, but was it the standard at the Children's Center to give a list of service providers?

A. Yes.

ECF 19-1 at 193-195 (emphasis added). On cross-exam, Nurse Gibson testified that she did not know for sure, in C.Y.'s case, whether C.Y. was in fact "testing the waters" by incrementally disclosing. Nurse Gibson also testified that she found *no physical evidence of abuse*. *Id*. at 196.

In Ground Eight, Petitioner argues that trial counsel was inadequate for failing to object to Nurse Gibson's testimony regarding incremental disclosures, and to Nurse Gibson's testimony that she recommended that C.Y. undergo "counseling to deal with the issue of sexual abuse." Petitioner argues that this latter testimony implied that Nurse Gibson had concluded that C.Y. was sexually abused, thereby improperly "vouching for" or "bolstering" C.Y.'s credibility.

## 2. *Martinez v. Ryan* Standard for Excusing Procedural Default

Petitioner admits that Ground Eight was procedurally defaulted, but argues that the procedural default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). The Supreme Court has explained:

> [W]here state law requires prisoners to raise claims of ineffective assistance of trial counsel "in an initial-review collateral proceeding," rather than on direct appeal . . . "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if" the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding.

*Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Martinez*, 566 U.S. at 16-17) (citation omitted). Further, the Ninth Circuit has explained:

> To demonstrate cause and prejudice sufficient to excuse the procedural default, . . . [a petitioner must] make two showings. First, to establish "cause," [the petitioner] must establish that his counsel in the state postconviction proceeding was ineffective under the standards of *Strickland. Strickland,* in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different. Second, to establish "prejudice," he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."

*Pizzuto v. Ramirez*, 783 F.3d 1171, 1178-79 (9th Cir. 2015) (quoting *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014). Petitioner argues that his procedural default of Ground Eight should be excused because post-conviction counsel was ineffective under the standards of *Strickland* for failing to challenge trial counsel's failure to object to Nurse Gibson's testimony.

### 3. Counseling Recommendation

#### a. *State v. Southard*

The Oregon Supreme Court has long held that it is improper for one witness to testify as to the credibility of another witness. *See State v. Middleton*, 294 Or. 427, 438 (1983) ("We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth."). At the time of Petitioner's trial on March 11-12, 2008, "the rule regarding expert testimony as to a diagnosis of child sexual abuse was exemplified in *State v. Wilson*, 121 Or. App. 460, 465-66 [(1993)]." *Umberger v. Czerniak*, 232 Or. App. 563, 564-65 (2009). Under *Wilson*, a medical expert was "not precluded from testifying as to her medical diagnosis simply because the jury may infer from that testimony that another witness is or is not telling the truth." *Id.* at 564-65 (citing *Wilson*, 121 Or. App. at 465). In other words, *Wilson* held that a diagnosis of sexual abuse absent physical evidence was *not* a direct comment on credibility and, as such, did not constitute improper vouching. *See id.* ("Although, if believed, Bays' testimony supported the child's testimony, that does not render it a *direct* comment on the child's credibility.").

In two post-*Wilson* cases, the Oregon Court of Appeals discussed whether a diagnosis of sexual abuse constituted "scientific evidence" subject to the analyses in *State v. Brown*, 297 Or. 404 (1984), and *State v. O'Key*, 321 Or. 285 (1995), which laid out the factors relevant to and foundation required for the admissibility of scientific evidence.[1] In *State v. Trager*, 158 Or. App. 399 (1999), a defendant was charged with sexual abuse and moved *in limine* to exclude

---

[1] As the Oregon Supreme Court later summarized, "[t]o be admissible, scientific evidence must meet three criteria: It must be relevant; it must possess sufficient indicia of scientific validity and be helpful to the jury; and its prejudicial effect must not outweigh its probative value." *State v. Southard*, 347 Or. 127, 133 (2009) (citing Oregon Evidence Code ("OEC") sections 401, 702, and 403, respectively).

expert testimony about medical diagnoses of sexual abuse of the victims. The court, sitting *en banc*, split on the issue of whether the diagnoses were "scientific evidence," but all eight judges agreed that the evidence was properly admitted. Two years later, in *State v. Sanchez-Cruz*, 177 Or. App. 332 (2001), the Oregon Court of Appeals, relying in part on an intervening Oregon Supreme Court case, *Jennings v. Baxter Healthcare Corp.*, 331 Or. 285 (2000), discussing scientific evidence, held that a diagnosis of child sexual abuse is scientific evidence "because it possesses significantly increased potential to influence jurors as a scientific assertion." *Sanchez-Cruz*, 177 Or. App. at 341. Thus, the Court held, medical diagnoses of child sexual abuse "must be subjected to the foundational requirements of [*State v. Brown*, 297 Or. 404 (1984)] and [*State v. O'Key*, 321 Or. 285 (1995)]." *Id*.

In *Sanchez-Cruz*, the defendant also challenged the admissibility of the diagnosis under OEC 403. The court rejected the defendant's challenge, stating, in part, that it "disagree[d] that a medical diagnosis based in part on medical history *per se* measures the truthfulness and deception as does a polygraph examination" (a reference to *Brown*). *Sanchez-Cruz*, 177 Or. App. at 345. As the court explained, an examining doctor "considers physical conditions during an examination of the patient's body, as well as responses to questions, and evaluates findings from the physical and verbal examination to reach his or her conclusions. Those conclusions are not that a patient is or is not truthful, but that the patient's physical condition and verbal report are consistent with a particular illness or injury." *Id*. In *Sanchez-Cruz*, physical evidence supported a diagnosis of sexual abuse. *See id*. at 336.

On April 16, 2008, about one month after Petitioner's trial, the Oregon Supreme Court granted review in *State v. Southard*, 347 Or. 127 (2009). In October 2009, the court held that a physician's medical diagnosis of sexual abuse, absent physical evidence of abuse, was

inadmissible, because it did not provide the jury with information to which it did not already have access, and a sexual abuse diagnosis made by a nurse, doctor, or other expert carried a high risk of prejudice. 347 Or. 127 (2009). In *Southard*, both parties agreed that a doctor's diagnosis of child sexual abuse was scientific evidence. *Southard*, 347 Or. at 132. Analyzing the factors relevant to the admissibility of scientific evidence, the court concluded that the diagnosis at issue was relevant and scientifically valid. Under OEC 403, however, the court concluded that the probative value of the diagnosis was low, because it "did not tell the jury anything that it was not equally capable of determining on its own," and the risk of prejudice was high, because "the diagnosis came from a credentialed expert, surrounded with the hallmarks of the scientific method." *Id*. at 140.

The State argues that *Southard* changed the law in Oregon, and that trial counsel was not required to be "clairvoyant" and anticipate changes in the law. Petitioner asserts that *Southard* did not *change* Oregon law, and that decisions of the Oregon Court of Appeals holding admissible diagnoses of sexual abuse made without physical evidence were wrongly decided under Oregon evidence law, and were contrary to the longstanding rule that one witness may not comment on the credibility of another witness. The Oregon Court of Appeals, however, has disagreed. In *Umberger v. Czerniak*, Oregon's intermediate court held that *Southard* constituted a change in the law. 232 Or. App. 563, 564-65 (2009). It is not for this Court, sitting in habeas, to question an Oregon appellate court's interpretation of Oregon law.[2] Furthermore, the Court is

---

[2] *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas."); *see also Estelle v. McGuire*, 502 U.S. 62, 63 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("This Court . . . repeatedly has held that state courts are the ultimate expositors of state law, and that we are bound by their constructions except in extreme circumstances not present here." (citations

persuaded that the Oregon Court of Appeals correctly interpreted *Southard* as a shift in Oregon law. At the time of Petitioner's trial, expert diagnoses of sexual abuse without physical evidence were admissible under *Wilson*, and *Wilson* did not directly conflict with Oregon Supreme Court cases holding that one witness "may not give an opinion on whether he believes a witness is telling the truth." *Middleton*, 294 Or. at 438; *see Brown*, 297 Or. (finding polygraph evidence inadmissible as direct comment on credibility); *State v. Milbradt*, 305 Or. 621, 625 (1988) (*en banc*) (psychologist testimony that there was "no evidence of deception and that what [the alleged victims] were reporting represented their experience" was admitted in error); *State v. Keller*, 315 Or. 273, 285 (1993) ("Dr. Bays testified on direct examination during the State's case-in-chief that '[t]here was no evidence of leading or coaching or fantasizing' during the child's interview at C.A.R.E.S. and that, in that interview, the child was 'obviously telling you about what happened to her body.' Each of those statements amounts to testimony that the child was credible."). Pre-*Southard* cases like *Middleton*, *Brown*, *Milbradt*, and *Keller* involved clear, direct statements by one witness on the credibility of another witness. As such, the Oregon Court of Appeals' holding in *Wilson* that a medical diagnosis—which the court viewed as an *implicit* statement on a complainant's credibility—was not obviously inadmissible under Oregon Supreme Court precedent. *See Wilson*, 121 Or. App. at 465 ("A medical doctor is not precluded

---

omitted)); *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975) (noting that the "questions of Tennessee law [relevant to the case] were resolved in favor of sustaining the action of the Governor by the Tennessee Court of Criminal Appeals in [*Hodges v. State*]," and that "[i]t was not the province of a federal habeas court to re-examine these questions"); *McSherry v. Block,* 880 F.2d 1049, 1052 n. 2 (9th Cir. 1989) (noting, in a habeas case, that "[t]he construction of a state statute by the Appellate Department of the Superior Court of California is binding on all, including the federal courts, unless it conflicts with decisions of the California Court of Appeal or the California Supreme Court"); *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) (noting that the Ninth Circuit is "bound by the California Court of Appeal's interpretation of what § 290 requires of a registrant with regard to giving his notice of a change of address. A state court has the last word on the interpretation of state law").

from testifying as to her medical diagnosis simply because the jury may infer from that testimony that another witness is or is not telling the truth.").

### b. Evidence of Prevailing Professional Norm

Several courts in this district have concluded that trial counsel is not constitutionally inadequate for failing to anticipate *Southard. See Taylor v. Franke*, 2017 WL 4227683, at *5 (D. Or. Sept. 22, 2017); *Bowen v. Nooth*, 2015 WL 1492728, at *6 (D. Or. Apr. 1, 2015); *Gresser v. Franke*, 2014 WL 1155229, at *5 (D. Or. Mar. 20, 2014); *Balogh v. Kilmer*, 2012 WL 7830039, at *4-5 (D. Or. Nov. 29, 2012), *report and recommendation adopted*, 2013 WL 1352400 (D. Or. Apr. 3, 2013); *McLain v. Blacketter*, 2012 WL 3116186, at *4 (D. Or. July 27, 2012); *Hatchett v. Hill*, 2011 WL 7443755, at *8-9 (D. Or. Dec. 21, 2011), *report and recommendation adopted*, 2012 WL 673767 (D. Or. Feb. 29, 2012). One court in this district, however, has reached the opposite conclusion. *See Wells v. Howton*, 2011 WL 5999356 (D. Or. Aug. 22, 2011), *report and recommendation adopted*, 2011 WL 5999359 (D. Or. Nov. 29, 2011).[3]

---

[3] Although, as discussed below, the Court ultimately reaches the same conclusion as the court in *Wells*, the Court is unpersuaded by the reasoning in *Wells*. First, the court in *Wells* concluded that *Southard* was not a change in the law, a finding with which this Court disagrees, as discussed above. Additionally, the court in *Wells* (as well as Petitioner in this case) relies on the Ninth Circuit's unpublished decision in *Burdge v. Belleque*, 290 F. App'x 73 (9th Cir. 2008), for the proposition that counsel's failure to argue "viable legal theories," as Petitioner puts it, constitutes ineffective assistance. *Burdge* involved a meaningfully different factual scenario, in which the court concluded that a statute that had not yet been interpreted by Oregon courts was so clearly ambiguous that any competent defense attorney would have objected to the way the trial court applied it. Instead of doing so, trial counsel in *Burdge* "made a long and convoluted argument discussing the state of world affairs and abstract principles of justice." *Burdge*, 290 F. App'x at 78. The court, in an unpublished decision, held that "counsel's failure to assert a plausible, logical interpretation of a clearly ambiguous sentencing statute constituted deficient performance." *Id.* at 77. In the pending case, the inadmissibility of medical diagnoses of sexual abuse was not so obscure that any competent attorney would have objected to Nurse Gibson's testimony. To the contrary, the Oregon Court of Appeals had held such testimony to be admissible.

Petitioner, however, presents persuasive evidence that it was the prevailing professional norm among Oregon criminal defense attorneys to object to the admission of medical diagnoses of child sexual abuse when physical evidence was absent. None of the other decisions from this district on this matter appear to have discussed this precise issue, generally holding only that counsel is not inadequate for failing to anticipate *Southard* as a change in the law. Regardless of whether *Southard* constituted a change in Oregon law, however, a lawyer's conduct is inadequate if it is unreasonable under prevailing professional norms. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("To establish deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.") (citation, alteration, and quotation marks omitted).

Petitioner submits several affidavits by criminal defense attorneys in Oregon opining that, even before *Southard*, the norm among Oregon criminal defense attorneys was to object to expert testimony containing a medical diagnosis of sexual abuse in the absence of physical evidence. Petitioner submits evidence that attorneys at the Oregon State Public Defender's office ("OSPD") believed *Trager* was wrongly decided by the Oregon Court of Appeals and that the issue was ripe for review by the Oregon Supreme Court. The OSPD "encouraged attorneys to pursue this issue." ECF 29-1 at 2. Petitioner also submits evidence that an email exchange run by the Oregon Criminal Defense Lawyers Association ("OCDLA Listserve") "would periodically discuss the very issue of what challenges could be made to so-called 'diagnoses' of sexual abuse that seemed like no more than assertions that the complainant was telling the truth." ECF 29-1 at 12. The OCDLA Listserve, Petitioner's evidence suggests, is widely followed among Oregon

criminal defense attorneys. ECF 29-1 at 9. According to one attorney employed, at the time of her statement, by the Office of Public Defense Services' Appellate Division, she "and other attorneys in the State Public Defender's office continued to believe that the issue of whether a diagnosis of sexual abuse in the absence of physical corroborating evidence constituted an impermissible opinion was a viable issue that should continue to be raised at every available opportunity." ECF 29-1 at 28. "[I]t was the consensus among Oregon criminal defense practitioners that . . . the issue that eventually prevailed in [*Southard*] should be vigorously pursued until the Oregon Supreme Court addressed the issue." ECF 29-1 at 2. In short, Petitioner's evidence suggests that criminal defense attorneys in the State "did continue to raise and preserve th[is] issue until the Supreme Court allowed review in *Southard* and addressed it." ECF 29-1 at 19.

The State does not present any contrary evidence. The State argues, however, that this same evidence has been rejected by this Court and the Ninth Circuit, citing *Leonard v. Oregon*, 714 Fed. App'x. 801 (2018) (unpublished), and a brief from the district court docket underlying the Ninth Circuit's decision in *Leonard*. Before the district court in *Leonard*, the petitioner raised a similar argument and attached one of the attorney affidavits, written by Matthew G. McHenry, that Petitioner relies on in this case. *Compare* ECF 29-1 at 7-14 with *Leonard v. Oregon*, 2016 WL 1172114 (D. Or. Feb. 8, 2016) (No. 2:13-cv-1865-ST, Dkt. 50). *Leonard* is distinguishable for several reasons. First, the Findings and Recommendation in *Leonard*, which the district court adopted, did not specifically discuss the evidence of prevailing professional norms, nor did the Ninth Circuit's decision affirming the district court. Thus, it is not at all clear that such evidence has been "rejected." Additionally, in *Leonard*, the issue was whether the petitioner's *appellate counsel* should have raised a *Southard*-type challenge in the

petitioner's direct appeal, which was submitted four months after the Oregon Supreme Court granted the petition for review in *Southard*. The evaluation of *appellate counsel*'s obligations, the court explained in *Leonard*, involved a question of whether the *Southard*-type claim omitted by appellate counsel "was clearly stronger than issues that counsel did present." *Id*. at *5 (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). The court held that appellate counsel had not acted unreasonably in not raising the issue, based on the fact that counsel had raised "claims worthy of appeal," trial counsel had not preserved the objection, and appellate counsel was operating "during a time when the Oregon Court of Appeals had repeatedly rejected the argument that ultimately prevailed in *Southard*." *Id*. (citing *Sanchez-Cruz*, *Trager*, and *Wilson*). Although *Leonard* provides some support for the argument that *Southard* changed the law in Oregon, *Leonard* also applied a different standard of review, looking specifically at the actions of appellate counsel on direct appeal.

The State also notes that one affidavit relied upon by petitioner was made by an attorney who is currently suspended. Petitioner explains that this appears to be referring to Rankin Johnson, who was appellate counsel in *Sanchez-Cruz* and whose affidavit Petitioner relies upon. Petitioner notes that Mr. Johnson's suspension "is not based on a claim that he lacked an understanding of the law." The government's assertion that some unnamed attorney whose affidavit is included among several attached as evidence of a prevailing norm in 2008 is currently suspended does not persuade the Court that any particular affidavit should be disregarded on this ground.

The State also notes that two affidavits incorrectly state that "with respect to the admissibility of a diagnosis of sexual abuse, [*Trager*] was the only published Oregon case." The State cites to the docket in a different case, *Saunders v. Nooth*, 2:15-cv-48-YY, for this

proposition. The two statements in the affidavits to which the State refers in the *Saunders* docket

are also included in the affidavits attached by Petitioner in this case. *Compare Saunders*

Dkt. 43-1 at 13, ¶ 26, *with* ECF 29-1 at 13, ¶ 26; and *Saunders* Dkt. 43-1 at 31-32, ¶ 6, *with*

ECF 29-1 at 31-32, ¶ 6. The State does not explain how the statements in the affidavits are

incorrect. The Court presumes that the State refers to the decision in *Wilson* on the issue of the

admissibility of a child sexual abuse diagnosis, which predated *Trager*.[4] The State argues that

these two statements demonstrate that the attached attorney affidavits are inadequately

researched and reflect a misunderstanding of the issues at play in *Trager*. Because *Trager* dealt

with whether a diagnosis was "scientific evidence," rather than whether it constituted improper

vouching, which was the issue in *Wilson*, the Court is not persuaded that these affidavits misstate

the relevant case law to the extent that they must be disregarded.

       The State also argues that Petitioner's evidence does not establish a prevailing norm, and

that the relevant standard is not whether an attorney's conduct merely *diverged* from the

prevailing professional norm, but whether it was *unreasonable* under that norm. The State has

presented no evidence, however, to contradict Petitioner's evidence of an existing prevailing

norm at the time of Petitioner's trial. The State also offers no evidence to establish that trial

counsel's performance conformed to prevailing professional norms. Similarly, the State does not

cite any cases, or provide any specific argument, to support its suggestion that counsel may have

*deviated* from the prevailing norms but not acted *unreasonably* under those norms.

       Finally, the State argues that Petitioner's assertion—and evidence—that the prevailing

professional norm was to object to medical diagnoses of sexual abuse is inconsistent with the

---

[4] In the second instance to which the State cites, attorney Dennis Balske refers to *Trager* as the "only case . . . from the intermediate court on the subject," but does not define "subject" for purposes of that statement. *See* ECF 29-1 at 31-32, ¶ 6.

Oregon Court of Appeals' statement in *Volynets-Vasylchenko* that it had "issued written opinions in dozens of cases involving unpreserved claims of error under *Southard*." 246 Or. App. 632, 638 (2011). As Petitioner argues, the State essentially asks the Court to determine the prevailing professional norm based on the lowest common denominator. Although, as Petitioner acknowledges, not all criminal defense attorneys were objecting to *Southard*-type testimony, Petitioner's evidence demonstrates that an attorney, to perform competently, was required to do so.

Petitioner has presented persuasive evidence that it was the prevailing professional norm, at the time of Petitioner's trial, to object on *Southard*-type grounds to the admissibility of diagnoses of child sexual abuse absent physical evidence. The State's asserted reasons for disregarding this evidence are unpersuasive, and the State puts forward no contrary evidence of its own.

There are three remaining issues to address regarding Petitioner's evidence of a prevailing professional norm. First, the evidence is that criminal defense attorneys were objecting to the admission of *diagnoses* of child sexual abuse, but Nurse Gibson did not directly and explicitly testify about a diagnosis in Petitioner's trial. Specifically, Nurse Gibson did not *expressly* state that she made a diagnosis of sexual abuse. At trial, Nurse Gibson indicated only that she recommended "counseling to deal with the issue of sexual abuse." If Nurse Gibson's statement did not amount to a diagnosis of sexual abuse, then there is no evidence that it was objectionable under the prevailing professional norm, or that it would be inadmissible under *Southard*. One could imagine that a nurse, examining a child claiming to be a victim of sexual abuse, might recommend "counseling to deal with the issue of sexual abuse" regardless of whether or not that nurse made an actual diagnosis of sexual abuse (and, in fact, in this case

Nurse Gibson assessed C.Y. only as "highly concerning for sexual abuse," a characterization that, Petitioner explains, is made when an evaluator does not have enough information to conclude that a child has been sexually abused).

In *State v. Volynets-Vasylchenko*, a doctor testified that one of the treatment recommendations made for a child alleged to be a victim of sexual abuse is that, among other things, the child "be entered into individual age appropriate therapy, and that the therapist be skilled in working with children who have been victims of abuse." 246 Or. App. at 639. The court held that "no juror could take [this] recommendation as anything other than a statement that [the alleged victim] has been the victim of abuse." *Id*. As the court explained, this "recommendation conveyed the expert's implicit conclusion that the alleged victim's reports of abuse are credible." *Id*. (quotation marks omitted); *see also State v. Feller*, 247 Or. App. 416, 419-20 (2011) (noting that *Volynets-Vasylchenko* held "that the trial court committed plain error under *Southard* in admitting, in the absence of physical findings, treatment recommendations that *implied that a diagnosis had been rendered*). *Volynets-Vasylchenko* was not characterized as an *expansion* of *Southard*. Rather, the court in *Volynets-Vasylchenko* concluded that an implied diagnosis of abuse is equivalent, for purposes of *Southard*, to an actual diagnosis of abuse. In the pending case, although Nurse Gibson's recommendation that C.Y. engage in therapy "to deal with the issue of sexual abuse" may be slightly less explicit than the statement in *Volynets-Vasylchenko*, it mirrors the recommendation held inadmissible in *Volynets-Vasylchenko* and implies that a diagnosis has been rendered.

The second question is whether the evidence presented to the Court sufficiently establishes that all *competent* attorneys at the time of Petitioner's trial would have objected to an *implicit* diagnosis of sexual abuse as well as an *explicit* diagnosis. Although none of the attorney

affidavits expressly state as much, in light of *Voynets-Vasylchenko*'s characterization of this as an obvious proposition, the Court concludes that Petitioner's evidence demonstrates that the prevailing professional norm would have been to object to the type of statement that Nurse Gibson made as a diagnosis of child sexual abuse.

The third potential issue with Petitioner's evidence of a prevailing norm is that several of Petitioner's affidavits explain that the prevailing norm was to object to *Southard*-type statements on the grounds that diagnoses had *always* been inadmissible under Oregon law, properly understood, and that decisions of the Oregon Court of Appeals holding otherwise were incorrectly decided. As discussed above, the Court disagrees with these two underlying assumptions. Ninth Circuit case law does not require a lawyer "to file a motion which he knows to be meritless on the facts and the law." *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Based on the Court's interpretation of Oregon law, an objection on these grounds would have been unmeritorious. To find trial counsel inadequate for failing to raise it, therefore, may seem counterintuitive.

There is evidence, however, that the split court in *Trager* and the fact that *Sanchez-Cruz* quickly overturned *Trager*'s holding that diagnoses were not scientific evidence presented an area that was ripe for review. Additionally, *Sanchez-Cruz* arguably left open the question of whether a diagnosis with no corroborating physical evidence would be admissible, because in *Sanchez-Cruz* there was physical evidence. Further, the evidence is that, regardless of the reason, the Oregon criminal defense bar recognized this as an area of potentially changing law and made a practice of objecting in the interest of defendants. This approach succeeded in *Southard*, very shortly after Petitioner's trial. As such, the Court finds Petitioner's evidence of a prevailing professional norm compelling.

### c. Did Trial Counsel Err in Not Objecting to Nurse Gibson's Treatment Recommendation

*Strickland* demands a "context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 523. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

At the time of Petitioner's trial, the Oregon Supreme Court had not yet granted review in *Southard*, and this issue was governed by *Wilson*. As discussed above, however, Petitioner submits evidence of a prevailing professional norm of objecting to medical diagnoses of child sexual abuse in the absence of corroborating physical evidence. The State has not persuasively disputed that evidence. The Court concludes, therefore, that by failing to object to Nurse Gibson's testimony, trial counsel failed to provide "reasonably effective assistance." *See Strickland*, 466 U.S. at 687. Notably, Petitioner's trial took place on March 11-12, 2008, and the Oregon Supreme Court granted review in *Southard* on April 16, 2008. Petitioner's underlying ineffective assistance of counsel claim is therefore substantial and, as such, Petitioner has established "prejudice" for purposes of *Martinez*.[5]

As discussed above, in order to prevail on a procedurally defaulted claim, Petitioner must also show that "*post-conviction* counsel's performance was deficient, and [that] there was a

---

[5] The Court notes that the Ninth Circuit suggested, in an unpublished decision, that an ineffective assistance of counsel claim based on *Southard* is unlikely to succeed. *See Williams v. Nooth*, 606 F. App'x 380, 381 (9th Cir. 2015) ("[R]easonable post-conviction counsel would have known that the Oregon Supreme Court hadn't even granted review in *Southard* when direct-appeal counsel filed his brief, and that [the Ninth Circuit] 'do[es] not mandate prescience, only objectively reasonable advice under prevailing professional norms. . . . Accordingly, reasonable post-conviction counsel could have viewed an attack on direct-appeal counsel's effectiveness as a 'weaker issue[ ]' with 'little or no likelihood of success.'"). This Court is not bound, however, by unpublished decisions of the Ninth Circuit. *See* Ninth Circuit Rule 36-3(a). *Williams*, furthermore, does not discuss evidence of a prevailing professional norm.

reasonable probability that, absent the deficient performance, the result of the *post-conviction* proceedings would have been different." *Pizzuto*, 783 F.3d at 1178-79 (9th Cir. 2015) (emphasis added). Here, Petitioner filed a formal petition for post-conviction relief in 2012, after the Oregon Supreme Court decided *Southard*. ECF 18-1 at 69-74. Had post-conviction counsel raised the challenge Petitioner now raises to trial counsel's failure to object to Nurse Gibson's testimony, there is a reasonable probability that Petitioner's post-conviction proceedings would have been different. Although the Oregon Court of Appeals held in *Umberger* that trial counsel was not inadequate for failing to make a *Southard*-type objection prior to *Southard*, the *Umberger* court did not engage with evidence of a prevailing professional norm, as Petitioner has presented to the Court in this case. Further, had Oregon courts denied Petitioner's request for post-conviction relief, Petitioner may have brought his *Southard* claim to federal court, and the claim would not have been procedurally defaulted.

The Court concludes that under *Martinez v. Ryan*, cause exists to excuse Petitioner's procedural default of Ground Eight with respect to Petitioner's claim that trial counsel should have objected to Nurse Gibson's testimony about a treatment recommendation for C.Y.

### 4. Incremental Disclosures

Petitioner also objects to the admission of Nurse Gibson's testimony that some children who are victims of sexual abuse incrementally disclose information. In *Southard*, the Oregon Supreme Court affirmed that "depending on the foundation and the purpose for which the testimony is offered, expert testimony regarding aspects of child sexual abuse with which a lay person ordinarily would not be familiar may be admissible." *Southard*, 347 Or. at 142. As an example, the court noted *State v. Perry*, 347 Or. 110 (2009), for holding that "evidence that some children who have been abused may delay disclosing abuse is admissible to disprove a claim that delay in reporting demonstrates that no abuse occurred." *Id*.

Petitioner argues that Nurse Gibson's statement about incremental disclosures was inadmissible, citing *State v. Lupoli*, 348 Or. 346 (2010), for support. In *Lupoli*, which was decided after *Southard* and after Petitioner's trial, a defendant argued that statements made by healthcare providers were impermissible as direct comment on the credibility of several alleged sexual abuse victims. In *Lupoli*, experts testified to a diagnosis of sexual abuse without physical evidence. The defendant did not object to the admission of the diagnoses, but did object to several other statements made by the experts. The court concluded that the testimony of one expert was inadmissible "vouching" because, although "discrete portions of [it] might be admissible in many circumstances . . . those otherwise permissible or potentially permissible portions of [an expert's] testimony were inextricably bound up with portions that constituted clear 'vouching,'" such as the expert's diagnosis absent physical evidence. *Id*. at 362. As the court explained, "[w]hen [that expert] then was asked the basis for her diagnosis, she was implicitly declaring, with each statement and description, why she had found [the alleged victim] to be credible." *Id*. The court reached the same conclusion about testimony from two other experts, even though "in the abstract or in some other context" such testimony may be permissible. *Id*. As relevant here, the court noted that even one expert's "general description of the circumstances that can point to a child's suggestibility or the possibility that the child has been coached" might be admissible in other contexts, but was not admissible in the context of the experts' "ultimate individual expert opinions," which themselves were inadmissible under *Southard*. *Id*. at 362-63.

Petitioner argues that Nurse Gibson's testimony about incremental disclosure was intertwined with testimony implying a sexual abuse diagnosis. In *Lupoli*, however, the statements were tied up with a diagnosis because the experts were testifying to the characteristics

and behaviors of the specific children at issue that led them to believe the children had been sexually abused. In this case, Nurse Gibson was speaking abstractly about whether it is normal for children who have been victims of sexual abuse incrementally to disclose. Although some of the objected-to testimony in *Lupoli* was of a general abstract sort, *see id.* at 362 ("The same is true of Findlay's general description of the circumstances that can point to a child's suggestibility or the possibility that the child has been coached. . . . the context differentiates that testimony in this case from cases in which it might otherwise be admissible. That context is their ultimate individual expert opinions . . ."), that testimony came in the context of an explicit medical diagnosis, and, more importantly, in the context of an explicit explanation by the expert of *why he believed the alleged victim to be credible*. The expert testified, immediately after generally describing what "suggestibility" meant, that he "did not find [the alleged victim] . . . very suggestible. She answered 'no' to a lot of questions. She kind of corrected herself at one point. She didn't appear that suggestible to me." *Id.* at 355.

Here, unlike in *Lupoli*, Nurse Gibson was not commenting directly on C.Y.'s credibility, and did not discuss incremental disclosure in the context of explaining *why* she did or did not make a diagnosis of abuse. Nurse Gibson's testimony about incremental disclosures was therefore not intertwined with any impermissible vouching. Furthermore, the impermissible vouching with which the testimony was intertwined in *Lupoli*—a sexual abuse diagnosis without physical evidence—had not been held inadmissible at the time of Petitioner's trial. It is too far attenuated to suggest that trial counsel was inadequate not only for failing to object to a *Southard*-type diagnosis, to which other attorneys were consistently objecting, but also for failing to object to testimony that was arguably related to testimony that—although not yet held inadmissible—was arguably so. The Court rejects Petitioner's argument on this point.

### 5. Merits of Ground Eight

Because the Court concludes that cause exists to excuse Petitioner's procedural default of Ground Eight, the Court reaches the merits of Petitioner's habeas claim on this issue. The Court has already concluded that Petitioner was denied adequate assistance of trial counsel. The only question, therefore, is whether this error was harmless.

The State argues that any error in admitting Nurse Gibson's testimony was harmless, because the case was tried to the court, rather than to a jury. The general rule in Oregon is that

> in a case tried by a court, sitting without a jury, it is assumed that the trial judge disregarded [any inadmissible evidence] and relied only upon competent evidence as the basis for his findings and judgment, unless it reasonably appears from the record that the incompetent evidence influenced the trial court in its decision.

*Haines Commercial Equip. Co. v. Butler*, 268 Or. 660, 669 (1974) (citing *Borntrager v. McCann*, 244 Or. 620, 629 (1966) and *Thomas v. Howser*, 262 Or. 351, 357 (1972)); *see also State v. Fulmer*, 229 Or. App. 386, 395 (2009) ("When a case is tried to the court, appellate courts presume, unless the record demonstrates otherwise, that the trial court disregarded any inadmissible evidence and based its findings and judgment only on admissible evidence.").

Some cases closely analogous to this context, however, have questioned the universal applicability of this principle. In *State v. Marrington*, an expert testified to the characteristics of sexually abused children, and the trial court did not require the State to establish under *Brown* and *O'Key* that the expert's testimony was scientifically valid. 335 Or. 555, 564 (2003). The Oregon Supreme Court held that this was error, and the State argued that any error should be presumed to be harmless in a trial to the court. The Supreme Court then commented "on the State's contention that, 'in a trial to the court, evidentiary error is presumed harmless in the absence of an affirmative indication that the court actually relied on the erroneously admitted evidence.'" *Id.* The court noted that such a rule of appellate review may be "applicable in an

appropriate case." *Id*. But, if "erroneously admitted evidence had been crucial to a particular

outcome in a case, then some further analysis must be undertaken." *Id*. In *Marrington*, the court

disagreed with the State's argument that "the trial court's failure to mention [the] testimony in its

remarks surrounding the announcement of its decision should play some role in our assessment

of the impact of the erroneously admitted evidence." *Id*. As the court explained:

> This case involved a swearing contest. The victim claimed that
> there had been sexual contact in the form of inappropriate
> touching; defendant denied that it had occurred. There were no
> other witnesses to the touching, and there was no physical
> evidence of any kind that corroborated the alleged abuse.
>
> The victim's delayed reporting was not a tangential issue, but a
> central factual issue in this case. Shouse's testimony directly
> addressed that issue and there is nothing in the record to indicate
> that the testimony played no role in the trial court's assessment of
> the state's proof. Under the circumstances, we cannot conclude
> that there is little, if any, likelihood that the error affected the
> court's verdict.

*Id*. at 565-66. The Oregon Court of Appeals reached a similar conclusion, through similar

reasoning, in *State v. Davila*, 239 Or. App. 468, 478 (2010), which involved a challenge based

on *Southard* to testimony of a diagnosis of sexual abuse without corroborating physical evidence.

In this case, although the court did not explicitly reference Nurse Gibson's testimony—

or, in fact, any specific evidence—in rendering its decision, there is also no indication that the

court *disregarded* Nurse Gibson's treatment recommendation. As in *Marrington* and *Davila*, this

case involved a "swearing contest," and a major issue in the case was whether C.Y.'s reports of

abuse were credible. In such a case, the Court cannot presume that an expert's testimony tending

to indicate that the expert believed C.Y.'s reports had little, if any, likelihood of affecting the

court's verdict.

**CONCLUSION**

The Court ADOPTS IN PART Judge Beckerman's Findings & Recommendation (ECF 46) on Grounds One through Seven. With respect to Ground Eight, the Court concludes that habeas relief is warranted. The Court orders that the State initiate a new trial within 90 days of this Opinion and Order.

**IT IS SO ORDERED.**

DATED this 11th day of June, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge